In the Matter of JAMES T. MOLLOY, Respondent, *v.* JAMES R. LAWLEY et al., Constituting the Board of Elections of Erie County, Respondents, and BARBARA M. SIMS, Appellant.

In the Matter of MICHAEL F. DILLON, Respondent, *v.* JAMES R. LAWLEY et al., Constituting the Board of Elections of Erie County, Respondents, and BARBARA M. SIMS, Appellant.

Fourth Department, June 11, 1969.

*William Sims* for appellant.

*Flaherty & Shea* (*Thomas P. Flaherty* of counsel), for James T. Molloy and another, respondents.

*George M. Nelson, County Attorney* (*Robert E. Casey* of counsel), for Board of Elections, respondent.

*Per Curiam.* Special Term in its amended findings invalidated 113 of the 1,081 signatures determined to be valid by the Board of Elections, thereby reducing the number thereof below the number of 1,000 required to permit appellant's name to be placed on the ballot for the primary election as a candidate for the office of District Attorney of Erie County.

We find that 40 of the signatures so invalidated are in fact valid and that there are a sufficient number of valid signatures on appellant's designating petition to require that her name appear on the ballot to be used in the Democratic Primary Election on June 17, 1969. Moreover, as hereinafter more fully set forth, we conclude that the correct total of valid signatures is 1,300.

Special Term invalidated 13 signatures because the names were written by another person. From the testimony of 9 of the persons whose names were so written it appears that 9 of the names so invalidated were written at the request and in the presence of the persons whose names were so written. The signatures which we find to be valid are those specified in the findings of fact as (a) (c) (d) (f) (g) (h) (i) (j) and (k) of paragraph 1, relating to the designating petition as follows:

| Name | Page | Line |
|---|---|---|
| Cramer | 79 | 24 |
| Brunson | 68 | 15 |
| McKinnon | 22 | 11 |
| Staton | 22 | 19 |
| Woolwine | 90 | 13 |
| Gray | 23 | 16 |
| Green | 17 | 12 |
| Hutcherson | 58 | 19 |
| Brown | 90 | 22. |

(Cf. *Matter of LeSawyer* v. *Board of Elections,* 207 Misc. 12.) We also find that the signature of Don McCullough was improperly invalidated by Special Term in its finding 2 (A) 3, because it had been previously properly invalidated by its finding 1 (e).

Thus, unlike the factual situation in *Matter of Haas* v. *Costigan* (14 A D 2d 809, affd. 10 N Y 2d 889) relied on by respondents, the persons, the validity of whose signatures has been challenged, have here testified that each authorized the signer to place the challenged signature on the petition.

At 2 (A) of the amended findings of fact the court found that 16 signatures were invalid because they were not signed before the subscribing witness. The record shows that Mrs. Green signed in the presence of the witness; there is no proof that Alex Bronson did not sign before the witness; there is no proof that the witness was not present when Mr. and Mrs. Pearson signed. In these circumstances we reinstate these 4 names. We also find that the court should not have invalidated the signature of George Binkley because the board had already invalidated it.

At 2 (B) the court invalidated 5 signatures by striking entire page 70. There is only proof of 2 persons not signing before the witness, but these names had been previously stricken. Therefore we reinstate the 5 names, to wit: Thompson, Gibbs, Giles, Orties and Cramer.

At 2 (C) the court invalidated 16 by striking entire page 68. There is only proof of 2 persons not signing before the witness, and these 2 were invalidated by the board on other grounds. Therefore we reinstate the 16 names.

The person alleging the invalidity of a signature has the burden of proving that invalidity. (2 Gassman, Election Law [2d ed.], § 125.) Because the burden of proof of a petition's invalidity is on the person attacking the petition it cannot be inferred that the entire sheet is permeated by fraud without further proof as to a particular sheet. "The instant taking of the signatures of those persons who did not appear and sign the subject petitions before these candidates [witnesses] should result only in the disqualification of the particular signatures." (*Matter of Johnson* v. *Westall,* 208 Misc. 360, 364, affd. 286 App. Div. 966; see, also, *Matter of Konow* v. *Power,* 284 App. Div. 847, affd. 307 N. Y. 822; *Matter of O'Donnell* v. *Ryan,* 19 A D 2d 781, affd. 13 N Y 2d 885; 18 N. Y. Jur., Elections, § 198.) Thus the remaining signatures should have been included in Mrs. Sims' tally.

Mrs. Fagan's name was stricken by consent but was not included in the findings of Special Term. Therefore it should be stricken from the petition.

At 3 (c) the court found that there were 6 remaining valid signatures on page 93 of the petition, but it struck them because in the statement by the witness at the bottom of the page the witness stated the district and ward of her residence in two inconsistent ways, namely, the 20th district of the 13th ward, and the 13th district of the 20th ward, but she did set forth her street address as 24 Glendale Place, and said that in 1968 she also lived at 24 Glendale Place. Upon the hearing counsel stipulated that the correct district is the 13th district of the 20th ward. Obviously there was no fraud or misrepresentation with respect to this address; there was clearly a mere reversal of language which in fact misled no one and was readily subject to verification. It was error therefore to strike these 6 names, to wit, Garbon, Land, Hill, Cuningham, Pope, and Cameron, Jr. (*Matter of Acito* v. *Power*, 17 A D 2d 710.)

Furthermore, we pass upon the validity of the designating petition on the merits, as did Special Term. We do not look upon the proceedings as indicating an abandonment or withdrawal by respondent. The court specifically ruled that respondent Sims' counsel was to remain in the case and then proceeded to state that "I will declare her petitions invalid, that she does not have the proper number of signatures, less than one thousand signatures. And I will make that ruling subject to ruling on the matters that I have reserved upon." The specific findings made by the court relative to the validity of the signatures on the petition, which we have been called upon to review, were all made based on testimony preceding this statement by the court and while all counsel were present and participating in the hearing.

As noted herein, we have thus far treated the validity of 1,081 signatures on the designating petition as certified to be valid by the Board of Elections. Petitioners urge that our consideration should be thus limited because of an alleged " stipulation " they claim was made by the parties. The record, however, reveals that the colloquy between the court and counsel is at best so ambiguous in this regard that we are constrained to comment on the determination previously made by the Board of Elections. The burden of proof to invalidate the petition rests upon petitioners; and what part they desire to attack is clearly within their discretion but this does not negate the fact that the entire petition is before this court to review

pursuant to subdivision 1 of section 330 of the Election Law. This we may do because "when a proceeding is brought to invalidate a petition, the court is not limited to the objections filed in the Board of Elections. It may examine the entire petition to determine its validity." (2 Gassman, Election Law [2d ed.], § 114, p. 676 and cases cited therein.) Furthermore, the interests of justice dictate that all valid signatures should be examined and considered with due regard to the provisions of the Election Law, which in all equity and fairness should give full effect to the voters' intent to designate the candidate of their choice and permit the electorate to make its selection.

Having reached this conclusion we return to a further review of the designating petition and particularly the correctness of the action of respondent Board of Elections in invalidating a total of 1,583 signatures of the total, as filed, of 2,664 signatures. Our examination of the designating petition furnishes convincing proof that the board improperly invalidated a total of at least 291 signatures. This total may be conveniently broken down into four categories, which will be discussed seriatim.

The board apparently invalidated a total of 156 signatures (designating petition, pages 12, 18, 34, 84, 89, 100, 107, and 110) — in addition to other signatures on those pages invalidated for other reasons — because the statement of the attesting witness failed to set forth the ward — although election district number was stated — from which the witness was last registered. In each case, however, the witness stated his present address, district and ward numbers. The form then required year of last registration, district and ward numbers. In each instance the present address of the witness and his address when last registered was identical. Each witness, as stated, furnished his present address, ward and district, and repeated the same address and election district but failed to state the ward from which last registered.

The information sought was apparent on the face of the form and the defect could not possibly confuse, hinder or delay any attempt to ascertain or determine the identity, status and present address of the witness. The defect was not such as mandated invalidation of all the signatures on each of the several pages. (Cf. *Matter of Barber* v. *Varney,* 301 N. Y. 669; *Matter of Johnson* v. *Westall,* 208 Misc. 360, affd. 286 App. Div. 966, *supra*; *Matter of Acito* v. *Power,* 17 A D 2d 710, *supra*.)

The same reasoning applies to the action of the board in invalidating 25 signatures on page 91 of the designating peti-

180

tion.  Here the witness stated that he resided in the 13th district of the 13th ward at 27 Sidney Street, Buffalo.  All of this was repeated verbatim as to his place of last registration except for the failure to state that it was in the 13th district.  This invalidation is a clear exaltation of form over substance.

Next some 60 signatures were invalidated on the ground that the attesting witness failed to set forth the correct number of signatures on the sheet.  These relate to pages 29, 45, 51, and 131 of the designating petition.  On each of these pages there were fewer signatures than stated in the attestation paragraph. It is readily discernible that the difference is attributable to the fact that one or not more than two signatures had been crossed out in the body of the petition.  In other words, the witness counted signatures crossed out in completing the attestation form.

In the light of these facts it was an improvident exercise of discretion for the board to invalidate all signatures on the several pages.  The obvious purpose for the requirement is to prevent the addition of signatures after execution by the witness.  Where the number stated, as here, is less than the remaining number, there is no opportunity for such fraud.

Lastly, the board invalidated 50 signatures (designating petition pages 121 and 122).  The attestation form contains a requirement for the witness to state the year in which he was last registered for a general election.  The witness, who took the signatures on these pages, stated the year to be 1965 — presumably the year that permanent personal registration was inaugurated in Erie County.  We conclude that the witness may well have been correct.  Certainly the form presented an ambiguity as to the meaning of the words '' last registered ''. (Cf. *Matter of Giamboi* v. *Power*, 26 Misc 2d 568.)

In summary, we conclude that appellant's designating petition contained 1,300 valid signatures which well exceeded the statutorily required 1,000 signatures.  The order should be reversed and respondent Board of Elections directed to place the name of appellant Sims on the ballot for the June 17, 1969 Democratic Primary Election for the office of District Attorney of Erie County.

DEL VECCHIO, J. P., WITMER, GABRIELLI, BASTOW and HENRY, JJ., concur.

Order unanimously reversed on the law and facts, without costs, and Board of Elections of the County of Erie directed to

place the name of the respondent candidate Barbara M. Sims on the ballot for the party position of District Attorney of Erie County, in the Democratic Primary Election, to be held on the 17th day of June, 1969.